UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **Belva Webb & Faith Webb** | * | **Civil Action No.:** |
| | * | |
| Versus | * | Section: |
| | * | |
| Joseph P. Morella | * | Magistrate: |
| | * | |
| | * | Jury Trial |

* * * * * * * * * * * * * * * * * * * * * * * * * *

ORIGINAL 42 U.S.C. §1983 COMPLAINT:
<u>HATE CRIMES & DAMAGES</u>

Complainants Mr. Belva and Mrs. Faith Webb appear to allege and affirm the facts and claims that follow.

<u>Jurisdiction</u>

1.

These Courts have jurisdiction over these matters under 42 U.S.C.§1983, 88 and as defendants actions were performed under the color of law.

**Federal Law Claims**

Jurisdiction of this Court arises also under 28 U.S.C. §§ 1331, 1337, 1343(a), and 1367(a); 42 U.S.C. §§ 1983, 1985, 1986, and 1988. The defendant's action constitute Hate Crimes under 18 U.S.C.§245(b)(2), as such are when done by anyone who "willingly injures, intimidates or interferes with another person, or attempts to do so, by force because of the other person's race, color, religion or national origin." Defendant [Judge] J.P. Morella committed the hate crimes set forth below because Mr. and Mrs. Webb are African-American.

**Pendent State Law Claims**

Jurisdiction of this Court for pendent claims is authorized by 28 U.S.C. § 1367 with respect to the state law claims, inasmuch as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and under F.R.Civ.P.18(a) and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715.

Pendent claims arise from violation of claimant's right, as set forth in those claims and as the rights violated are expressly guaranteed and protected under the 1974 Louisiana Constitution, particularly Art. 1 § 2 (due process of law), § 3 (right to individual dignity), § 5 (right to privacy), § 19 (right to judicial review), § 20 (right to human treatment), and § 22 (access to courts); and under the laws of the State of Louisiana, including but not limited to LSA-R.S. 14:36, *et seq*. (assault), LSA-R.S. 14:40, *et seq*. (intimidating by officers), LSA-C.C. art. 2315 (liability for acts causing damages), (abuse of process and negligent misinformation) and all these actions by a duly appointed judge carry with them the color of law. *See*: *State v. Tate* 171 So. 108, *Monell v. New York City Dept of Social Services,* 436 U.S. 658*, City of Canton v. Harris,* 489 U.S. 387*, McMillian v. Monroe County,* 520 U.S. 781*, Bryan County Comm'r v. Brown,* 520 U.S. 397*, and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.)1999, *Holly Ray Burns v. Orleans*, No. 05-30837, U.S. Fifth Circuit Court of Appeals (14 January 2008).

Venue

2.

Venue is proper in these Courts as the all parties reside within St. Mary Parish and the acts giving rise to these hate crimes and civil claims took place in parishes that are within the Western District of the United States District Courts.

Defendant

3.

Joseph P. Morella, a person of the age of majority domiciled in the Parish of St. Mary, State of Louisiana, an attorney licensed by the State of Louisiana and is an officer of Its courts.

4.

Morella is sued in his individual capacity only and not in any aspect of his capacity as judge although his individual actions bring with them the color of law as such is presumed and understood by lay persons and any reasonable person who objectively examines the facts set forth below.

Fact Statement

5.

Judge Joseph P. (J.P.) Morella sits in the Courts for the Towns of Patterson and Berwick, Louisiana.

6.

Morella has a private practice of law in St Mary Parish.[1]

7.

Mr. and Mrs. Belva Webb bought a piece of real property at 619 Kentucky Street, Patterson, Louisiana.

8.

Subsequently they entered into an agreement to sell it to Patterson Chief of Police LaSalle.

---

[1] 107 Catherine Street, Patterson, Louisiana 70392 / Telephone (985) 395-3532 E-mail: jp@jpmorella.com Fax (985) 395-3533

-3

9.

LaSalle gave the Webbs an amount of $1,000 to confect the purchase agreement.

10.

Morella had closed the act of sale by which the Webbs originally bought the same property which they had now agreed to sell to Chief LaSalle.

11.

Morella was again closing-attorney for the sale of this same property between the Webbs and purchaser Mr. LaSalle.

12.

At some point Chief LaSalle appears to have changed his mind about the purchase.[2]

13.

In an attempt to make Mr. Belva and Faith Webb return the earnest money LaSalle had given them to confect the purchase agreement, Morella told the Webbs that there were liens on the property they owned and had contracted to sell to LaSalle.

14.

The Webbs took $1,000 from their bank account and went to see Chief LaSalle.

15.

When the Webbs met with Chief LaSalle and told him that Morella said there were problems with the title to the property, Chief LaSalle refused to take the money from the Webbs.

16.

---

Exhibit A - Affidavits of Bishop and Mrs. Belva Webb

Instead, Chief LaSalle told the Webbs that they should go to Morella and handle all the matters through him.

17.

They went to Morella's private law office at 107 Catherine Street, in Patterson.

18.

When Mr. Webb asked how there could be a lien on his property—since Judge Morella was also the attorney who closed the sale when the Webbs bought the property—Morella became enraged cursing the Webbs, calling them: "you son-of-a-bitchen niggers," "you black Mother Fuckers," and "you black-assed niggers."

19.

While they were trying to get out of his law office, Morella physically threatened the Webbs, causing Mrs. Webb to fall down the front stairs.

20.

Although this took place in Judge Morella's private law office, his actions took place under the color of law and the appearance of his authority and call into question his fitness as judge.

21.

Morella as a town court judge who acts on and off the bench under the color of law such as to give rise to claims under 42 U.S.C. § 1983 and related jurisprudence.

22.

Morella's actions call into question his moral fitness to be licensed by the Louisiana Supreme Court as an attorney-officer of the courts, charged with and sworn to uphold the Constitution and laws of the United States and the State of Louisiana.

23.

Attorneys licensed to practice by the Louisiana Supreme Court are sworn to uphold the Constitution and laws of the United States and those of the state.

24.

They are charged with ensuring that fairness and justice is made available to every citizen.

25.

The Louisiana Supreme Court in *In re: Judge Timothy Ellender*[5] reiterated the principles required of those who serve in the justice system and are licensed to be officers of the courts: "Our judicial system stands as the hallmark of a system created to ensure that fairness and justice is dispensed to every citizen, without fear of bias or prejudice."

26.

"Justice Francois-XavierMartin, a great Chief Justice of Louisiana, quoted by Justice Poche in *State ex rel. Attorney General v. Lazarus*, 39 La. Ann. 142, 1 So.361, 376 (1887), eloquently stated, "All those who minister in the temple of justice from the highest to the lowest, should be above reproach and suspicion. None should serve at its altar whose conduct is at variance with his obligations." It is widely understood that judges symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system."

27.

"As a public official, a judge's behavior <u>both on and off the bench</u> must comply with the highest of standards delineated in the Canons."

28.

Canon 1, entitled "A Judge Shall Uphold the Integrity and Independence of the Judiciary," provides: An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.

29.

Canon 2(A), entitled "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities," provides: A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

30.

Morella also tried to extort the earnest money of $1,000 from the Webbs by lying to them about the existence of a lien on the property they had contracted to sell to Police Chief LaSalle.

31.

Taking Morella's word initially, the Webbs approached Chief LaSalle with $1,000 cash, telling him that they were unable to find a lien on the property in the public records.

32.

Chief LaSalle refused to take the cash, instead referring them to Morella.

33.

Morella's attempt to make Mr. Belva and Mrs. Faith Webb return the earnest money they were given to confect the purchase agreement, by telling them that there was a lien on the property they had contracted to sell to Mr. LaSalle, constitutes fraud under La. Civil Code art.

1953.

34.

Morella's attempt to make Mr. Belva and Mrs. Faith Webb return the earnest money they were given to confect the purchase agreement, by telling them that there was a lien on the property they had contracted to sell to Mr. LaSalle, constitutes the predicate act of extortion under federal law.

35.

Morella's extortion and attempted civil fraud on the Webbs is compounded by official capacity as a town court judge who acts on and off the bench under the color of law, by his racist disposition confirmed by his verbal and physically threatening attacks on Mr. and Mrs. Webb.

36.

DAMAGES

Defendant in his individual but acting under the color of law was the cause in fact of the damages suffered by the Webbs, including but not only:

  A. Hate Crime Violence [Verbal and Physically Confrontational];

  B. Verbal Assault;

  C. Physical pain and suffering;

  D. Mental Anguish;

  E. Humiliation & Embarrassment;

  F. Loss of time and time expended legal matters;

  G. Loss of Enjoyment of Life;

  H. Attorney Fees to Defend Against False Charges;

    I.       Out of Pocket Expenses, and

    J.       Attorney Fees and Costs and Expert Fees related to 42 U.S.C. § 1983 action.

## COUNT I – § 1983 CAUSES OF ACTION

37.

Morella attempted to extort the Webbs and deprive them of their property without due process of law and their right to equal protection of the laws, due course of justice was impeded, in violation of the United States Constitution and its Amendments.

38.

Morealla acted with "deliberate indifference in not preventing these acts," combined with his willful acts in attempting to extort, and otherwise violate The Webbs' various constitutional rights.

39.

At all times pertinent hereto, the defendant had all appearances of acting under color of law, statutes, customs, policies, ordinances and usages of the Town of Patterson, Louisiana.

40.

Morella's actions appearing under the color of law had the effect of depriving the Webbs of their right to due process of law as well as other rights, privileges and immunities secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of Louisiana, which directly and proximately caused the damages complained of herein.

## COUNT II – DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

41.

As set forth in the fact statement above, Morella's actions against the Webbs' violate their rights to due process and equal protection as set forth by the United States Constitution and the Louisiana Constitution of 1974.

## COUNT VIII – STATE LAW CLAIMS

42.

Based on the facts set forth above, the Webbs assert the following claims under the Constitution, specifically Article I, Sections 2, 3, 4, 5, and 25, and laws of the State of Louisiana, La. C.C. arts. 2315, *et seq. in pari materia* with Title 14 of the Louisiana Revised Statutes, including the threats of false arrest, false, assault, extortion, and hate crimes.

43.

Defendant Morella did knowingly and intentionally, or in the alternative negligently, violate the Webbs' rights under the Louisiana Constitution, particularly Art. 1 §§2 (due process of law), 3 (right to individual dignity), 5 (right to privacy), 20 (right to human treatment), and 22 (access to courts); and under the laws of the State of Louisiana, including but not limited to LSA-R.S. 14:36, *et seq*. (assault), LSA-R.S. 14:40, *et seq*. (intimidating by officers), LSA-R.S. 14:66 (extortion), LSA-C.C. art. 2315 (liability for acts causing damages), LSA-C.C. art. 2316 (negligence, imprudence or want of skill), (abuse of process and negligent misinformation).

.  DEMAND FOR TRIAL BY JURY

44.

Complainants pray for a trial by jury.

PRAYER

WHEREFORE, complainant the Webbs requests the following relief:

a. Compensatory damages for all physical and emotional and the treatment thereof, for injuries caused by defendant, in favor of plaintiff in amounts appropriate under the facts and law;

b. Punitive damages from the individual defendants, jointly and severally, for malicious, willful and wanton actions done in reckless disregard for plaintiffs' rights as set forth above in amounts appropriate under the facts and law;

c. Pre-judgment and post-judgment interest;

d. All costs of these proceedings;

e. Reasonable attorneys' fees as allowed 42 U.S.C. §1988;

f. Injunctive relief for bad-faith prosecution;

g. All other just and equitable relief to which the plaintiff is entitled under federal and Louisiana law, and

\* Attached to this original petition is the joint affidavit of Belva & Faith Webb.

Respectfully submitted,

/s/ Martin E. Regan, Jr.

/s/ Glen A. Woods

/s/ Daniel G. Abel

Martin E. Regan, Jr. [La Bar No. 11153]
Glen A. Woods [La Bar No. 15071]
Martin E. Regan, Jr. & Associates
2125 St. Charles Avenue
New Orleans, LA 70130
Telephone: (504) 522-7260
Facsimile: (504) 522-7507
E-mail: mregan@reganlaw.com


and

DANIEL G. ABEL [LSBA No. 8348]
2421 Clearview Parkway
Legal Department / Suite 106
Metairie, LA 70001
Telephone: (504) 208-9610
Facsimile: (888) 577-8815
danielpatrickegan@gmail.com