# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Belva Webb & Faith Webb | * | Civil Action No.:6:10-cv-01557 |
| | * | |
| Versus | * | Judge Richard T. Haik, Sr. |
| | * | |
| Joseph P. Morella | * | Mag. Judge Patrick J. Hanna |
| | * | |
| | * | Jury Trial |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## THE WEBBS' OPPOSITION TO MOTION
## FOR SANCTIONS UNDER RULE 11

May It Please the Court:

The Webbs' complaint and most significant cause of action arises from Morella's racist attacks upon them particularly in light of the fact that he is a town court judge, a licensed attorney and therefore an officer of the courts, one obligated to impartially uphold the constitution and laws of Louisiana and the United States. The Webbs' complaint is not about Patterson Police Chief LaSalle's and Morella's refusal to take back the $1,000 of earnest money which they tried to return. Nor is it about the existence or non-existence of properly filed liens in 2004 when the Webbs entered into the purchase agreement with LaSalle. It is about Morella's violation of the Webbs' most basic constitutional rights, the guaranteed protection of their human dignity, and his erosion of public confidence in the integrity and impartiality of the Louisiana judiciary and bar.

Defendant Morella ignores and denies the facts evidencing his attacks on Pastor and Mrs. Webb which they set forth in their federal complaint and their sworn affidavits. Morella and counsel spend a page out of forty in their briefs acknowledging the allegations about his attack on the Webbs. Morella simply says that he never made such remarks to the Webbs nor did he ever lose his temper

and threaten them. His legal assistant swears under oath that <u>he has never made</u> a racial slur in the 27 years she has known him. Never? Not once? In 27 years? J.P.Morella?

To decide the Rule 11 matter, the Court should consider four issues:

1.      **Rule 11 - Certification of Evidentiary Support**. The Notes and Comments on Rule 11 are clear: "The certification is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention regarding the fact.  A hearing on a Rule 11 Motion is not a trial on the merits. The Webbs have verified the facts in their original complaint by sworn affidavit attached to the complaint. Their affidavit and testimony is "evidentiary support" of each of the allegations. Their own testimony is contrary to that of Morella and his legal assistant and therefore establishes genuine issues of material fact in dispute. Neither this motion nor Morella's motion to dismiss is a trial on the merits. Both are about Morella's conduct and whether that conduct gives rise to causes of action under either state or federal law. It does, under both. And Morella's conduct also erodes the public confidence in the integrity of the judiciary itself.

2.      **Judicial Conduct: Louisiana's "On or Off the Bench" Standard for Judges.**

Although Morella was not on the bench when he attacked the Webbs, his racist attacks are at variance with his obligations and erode public confidence in the impartiality and integrity of the judiciary.  "Justice Francois-Xavier Martin, a great Chief Justice of Louisiana, quoted by Justice Poche in *State ex rel. Attorney General v. Lazarus*, 39 La. Ann. 142, 1 So.361, 376 (1887), warned that "As a public official, a judge's behavior both on and off the bench must comply with the highest of standards delineated in the Canons."  He eloquently stated, "All those who minister in the temple of justice from highest to the lowest, should be above reproach and suspicion. None should serve at its altar whose conduct is at variance with his obligations." It is widely understood that judges

symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system."

Canon 1, entitled "A Judge Shall Uphold the Integrity and Independence of the Judiciary," provides: An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.

Canon 2(A), entitled "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities," provides: A judge should respect and comply with the law and should act <u>at all times</u> in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Morella's attacks on the Webbs is not only contrary to the professional obligations of attorneys, as a judge it undermines the public confidence in the impartiality and integrity of the Louisiana judiciary itself. Furthermore, Morella's actions constitute a deprivation of the rights of the Webbs under both federal and Louisiana law.

**3. Federal Law Claims**: 42 U.S.C. § 1983 Deprivation of Rights - Morella and counsel argue that Morella was not on the bench at the time the alleged acts took place and therefore he could not have acted under the color of law.

But the deprivation of individual's rights arise not only when a person acts under the color of law, but also when he acts under "custom" and "usage" within any state of the union. And those actions of "custom" and "usage" cause a deprivation of rights . . . guaranteed by the Constitution and laws of that state or of the United States. Louisiana is clear as to the place of "custom" in La. C.C. art. 3 [of the civil code].

42 U.S.C. § 1983 is clear:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress. Such civil suits [in equity] arise under
> 42 U.S.C. § 1983-1988 and under Louisiana law including but not limited to LSA-
> C.C. 2315, and conduct such as otherwise prohibited by Louisiana criminal statutes
> such as LSA-R.S. 14:36 et seq..

Deprivations of individual rights also occur because of such conduct as identified under18
U.S.C.§245(b)(2) Federally Protected Activities, although this code article does not give rise to civil
suits or suits in equity itself. As in the case of the use of federal DOTD standards in civil injury
claims, it does identify standards below which such conduct may not fall. As well, it is clear in
stating that the person who deprives another of his right does not have to act under the color of law.
These are hate crimes. They protect against any interference with inalienable rights and activities of
a person on the basic of race, color [and other characteristics] where those activities, benefits,
privileges or provided by or guaranteed by a state or federal law.

18 U.S.C. §245 (b)(2)(B) - Hate Crimes

(b) Whoever, whether or not acting under color of law, by force or threat of force willfully
injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—

(2) any person because of his race, color, religion or national origin and because he is or has been—

(B) participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof; while these federal code articles do not give rise to a cause of action themselves, they identify criminal acts and violations of individual rights which do give rise under 42 U.S.C. § 1983 and under Louisiana State Law including but not only La. R.S. 2315, et seq..

Actions such as Morella's attacks on the Webbs fall within the conduct identified and prohibited by the Hate Crimes acts. These acts identify the conduct which can be examined and considered in civil and equity actions under federal and state law. These acts are the acts which underlie the Webbs claims under Louisiana and federal law.

4.      **Louisiana Law Claims**. All persons including the Webbs are guaranteed certain inalienable rights under the United States Constitution and the1974 Louisiana Constitution, under Louisiana's Constitution particularly at Art. 1 § 3 (right to individual dignity), § 5 (right to privacy), § 20 (right to human treatment), and § 22 (access to courts); and under the laws of the State of Louisiana, including but not limited to LSA-R.S. 14:40, *et seq*. (intimidating by officers), LSA-C.C. art. 2315 (liability for acts causing damages), (abuse of process and negligent misinformation) *See*: *State v. Tate* 171 So. 108, *Monell v. New York City Dept of Social Services,* 436 U.S. 658*, City of Canton v. Harris,* 489 U.S. 387*, McMillian v. Monroe County,* 520 U.S. 781*, Bryan County Comm'r v. Brown,* 520 U.S. 397*, and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.)1999, *Holly Ray Burns v. Orleans*, No. 05-30837, U.S. Fifth Circuit Court of Appeals (14 January 2008). Those rights were violated by Morella in his attack on the Webbs.

I.      **Summary of Facts**

Judge Joseph P. (J.P.) Morella sits in the Courts for the Towns of Patterson and Berwick, Louisiana. Morella has a private practice of law in St Mary Parish.[1]

Mr. and Mrs. Belva Webb bought a piece of real property at 619 Kentucky Street, Patterson, Louisiana.  Later they entered into an agreement to sell it to Mr. LaSalle.  LaSalle gave them $1,000 to confect the purchase agreement. Judge Morella had closed the act of sale at which the Webbs originally bought the property. Judge Morella was again closing-attorney for the sale of this same property between the Webbs and purchaser Mr. LaSalle. At some point Mr. LaSalle changed his mind about the purchase.[2]

In an attempt to make Mr. Belva and Faith Webb return the earnest money LaSalle had given them to confect the purchase agreement, Judge Morella told the Webbs that there was a lien on the property they owned and had contracted to sell to Mr. LaSalle, who is also the Chief of Police for Patterson. Webb affirmed that he had looked in the property records for the Parish of St. Mary and did not find any such liens recorded against the Kentucky Street property at the time he entered into the agreement with LaSalle in 2004.

Webb also swore under oath that he had spoken with the property owner whom he bought the property from and that that gentleman also confirmed that there were no liens against the property at the time he sold the property to the Webbs. He does not acknowledge that Morella told him about any liens or the potential for liens based on other judgments. Morella closed the sale for the Webbs

---

[1] 107 Catherine Street, Patterson, Louisiana 70392 / Telephone (985) 395-3532 E-mail: jp@jpmorella.com Fax (985) 395-3533

[2] Affidavits of Bishop and Mrs. Belva Webb as Verification to the Original Petition.

a year before their entered into the purchase agreement with LaSalle.

Five years after the Webb-LaSalle agreement fell through, when Mr. Webb asked how there could be a lien on his property over five years before—since Judge Morella was also the attorney who closed the sale when the Webbs bought the property—Morella became enraged cursing the Webbs, calling them: "you son-of-a-bitchen niggers," "you black Mother Fuckers," and "you black-assed niggers."[3]  While they were trying to get out of his law office, Morella physically threatened the Webbs, causing Mrs. Webb to fall down the front stairs. Although this took place in Judge Morella's private law office, his actions call into question his fitness as judge.[4]  The Louisiana Supreme Court has long been clear in interpreting the Canons of Judicial Conduct: "As a public official, a judge's behavior both on and off the bench must comply with the highest of standards delineated in the Canons." *State ex rel. Attorney General v. Lazarus*, 39 La. Ann. 142, 1 So.361, 376 (1887).

More significantly, Morella's actions call into question his moral fitness to be licensed as an attorney-officer of the courts, charged with and sworn to uphold the Constitution and laws of the United States and the State of Louisiana. The First Amendment of the United States Constitution may protect a person's right to have and even to express racist and offensive beliefs or opinions, but it does not protect a person's race-based actions against other individuals such as Morella's actions against the Webbs in this case. But these motions are not trials on the merits.

## II.    Rule 11 Requirements: Avoid Foundationless Conclusions and Allegations

Morella and his assistant appear to acknowledge that racism and racist attacks are wrong as

---

[3]  Bishop and Mrs. Webb are African-American.

[4]  Supreme Court of Louisiana: No. 2004-O-2123: In re: Judge Timothy C. Ellender  [12/13/2004]

they both so vehemently deny that Morella did such. His assistant goes farther and states under oath that in her 27 year work relationship with Judge Morella, she never heard him make a racial slur. Never? Not once? In 27 years?

Federal Civil Rule 11 requires parties to conduct pre-filings investigations of the facts and law to avoid making foundationless conclusions or allegations. Before filing the complaint to which Morella objects, counsel Abel and the Webbs met on several occasions in Patterson, spoke on many more occasions, exchanged documents and other communications, and prepared, revised, and confected the sworn affidavit which is attached to the original complaint and sent to the Louisiana Judiciary Commission and the Louisiana Attorney Disciplinary Board [ODC]. Furthermore, the Webbs has sworn to and testified as to the facts in their complaint.

### III.   "Evidentiary Support" for Facts Regarding Morella's Actions

Under oath, Belva and Faith Webb have testified to the following facts [recorded here *verbatim by affidavit paragraph*]:          1.

I am Belva D. Webb, the husband of

Mrs. Faith Ann Webb.

2.

I am Faith Ann Webb, the wife of

Bishop Belva D. Webb.

3.

We were both present when the events testified to

happened and therefore we each have personal

knowledge of all things stated herein.

-8-

4.

We are husband and wife having been married on

4 December 1993 and have four children of our marriage.

5.

I Belva D. Webb am the Bishop of the Greater Power of Prayer

Church and Ministry formally of Patterson and now of Franklin, Louisiana.

6.

I Belva Webb am employed by the St. Mary Parish School Board

and have been employed by the School Board for approximately ten years.

7.

I Faith Ann Webb am employed at the Hattie Watts Elementary

School and have been employed there for almost three years.

8.

On or about 12 October 2009 we went to the Law Office of Mayor's Court Judge

Joseph P. Morella located in Patterson, Louisiana.

9.

Judge Joseph P. Morella's office is at municipal address 107 Catherine Street

in the City of Patterson, Louisiana 70392.

11.

We had bought a piece of property at 619 Kentucky Street in Patterson and

Judge Morella was the attorney who did the act of sale.

12.

We paid approximately $15,000 for the Kentucky Street property.

13.

The property had no lien or other encumbrance on it,

nor did Judge Morella tell us that there was a lien on it.

14.

I [Belva Webb] checked with the Assessor's and property office

in Franklin where all the records are kept for St. Mary's Parish.

15.

There was no lien on the property in the records when we bought it.

16.

I also spoke with the owner of the property whom we bought it from

and he assured me that there was no lien or encumbrance on the property

before or at the time when we bought it.

17.

In fact, there never was a lien on the Kentucky Street property

although Judge Morella told us there was on 12 October 2009.

18.

We decided to sell the Kentucky Street property and Patterson

and City Police Chief Patrick LaSalle wanted to buy it.

19.

We signed a purchase agreement with Chief LaSalle and he gave

us $1,000 as a part of the purchase agreement.

20.

Around the time of the act of sale, Judge Morella told us that

there was a lien on Kentucky Street and Chief LaSalle no

longer wanted to buy it.

21.

Judge Morella said we had to return the money to Chief LaSalle.

22.

On 12 October 2009, we went to meet Chief LaSalle and we had

the $1,000 to return to him although we did not know of any lien.

23.

We met with Chief LaSalle who would not take the $1,000, but

told us that we had to go see Judge Morella and give the money

to Judge Morella at his office.

24.

We went to Judge Morella's office right away.

25.

Judge Morella had told us that there was a lien on that piece of property at

municipal address 619 Kentucky Street [Patterson, LA] that we owned but

Judge Morella could not tell us the amount of the alleged lien.

26

Judge Morella told us that because of the lien on the property

-11-

Chief LaSalle no longer wanted to buy it.

27.

Judge Morella told us we would have to return the $1,000 to

Chief LaSalle that he had given us when he signed the purchase agreement.

28.

We told him that we had tried to give the $1,000 to Chief LaSalle

but he told us to come and give the money "to you" [Judge Morella].

29.

We went with the $1,000 to Judge Morella for Chief LaSalle but we did not

know or believe that there was a lien on Kentucky Street property.

30.

Judge Morella said to us that he told us at the act of sale when we

bought the property, that there was a lien on the property

and we bought the property anyway.

31.

I [Belva Webb] asked Judge Morella if I could see the documents proving the

lien or see whatever he thought I had signed that created the lien.

32.

When I asked to see that evidence, Judge Morella blew up.

33.

Judge Morella started cursing my wife and me and screaming

at us because I had asked for proof of the supposed lien.

-12-

34.

Judge Morella said to us "I'm tired of you son-of-a-bitchen niggers."

[Referring to Me and My Wife]

35.

Judge Morella said to us "Get you black-assed niggers of out here."

[Referring to Me and My Wife]

36.

Judge Morella called us: "You black Mother-Fuckers."

[Referring to Me and My Wife]

37.

Judge Morella's secretary heard all that went on

and looked embarrassed as she had always been nice to us.

38.

He kept yelling at us and called the City Police.

39.

We did not say anything to him other than to ask him about

the alleged lien and to let us see what evidence there was about a lien.

40.

We were humiliated and tried to get out of Judge Morella's office

as quickly as possible, but my wife fell on the way down the stairs.

41.

Judge Morella came to where my wife had fallen and stood over

-13-

her just glaring at her in a manner what was unbelievable.

42.

Judge Morella kept cursing at us and was doing

so until the City Police arrived.

43.

The City Police arrived around that time.

44.

The City Police were polite to us, asked us what had happened

listened to us and said that we should just go home.

45.

We went home.

46.

We believe that Judge Morella was trying to make us

or at least my husband get rowdy so that he could have

him arrested and prosecuted.

47.

My husband did not say a word, although Judge Morella had insulted

us in a very offensive manner and humiliated us as well.

[-original affidavits signed and in record-]

Belva and Faith Webb

-14-

IV.     **Rule 11 Requires "Evidentiary Support" for Facts and Allegations**

The Notes and Comments on Rule 11 are clear: "The certification is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention regarding the fact. That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position. On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient "evidentiary support" for purposes of Rule 11. The Webbs have presented evidence of Morella's acts which, at the least, prove that there are genuine issues of material fact in dispute.

A.     **"Evidentiary Support"of the Facts**

The evidence in favor of the Webbs is clear. Their affidavits given under oath as verification of the allegations and statements made in the original complaint constitute "evidentiary support" as "would suffice to defeat a motion for summary judgment".

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

The Rule 11 Committee has gone on to hold that "The standard for pre-filing research and inquiry "is one of reasonableness under the circumstances". *See Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975 (E.D.Pa. 1973).

Subdivisions (b) and (c). The subdivisions restate the provisions requiring attorneys and pro se litigants <u>to conduct a reasonable inquiry into the law and facts before signing pleadings</u>, written

-15-

motions, and other documents, and mandating sanctions for violation of these obligations. The rule continues to require litigants to "stop-and-think" before initially making legal or factual contentions. Counsel also spoke with persons in Patterson other than the Webbs. His conversations corroborated the Webbs' sworn-to facts as to the character and proclivities of Morella. His conversations also confirmed counsel's own assessment of the Webbs: honest, unassuming members of the Patterson community who are well liked and respected by the neighbors white and black alike.

Rule 11 also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions <u>for insisting upon a position after it is no longer tenable</u> and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.

### B. Support for the Applications of Law

**Federal Law Claims**: 42 U.S.C. § 1983 Deprivation of Rights - Morella and counsel argue that Morella was not on the bench at the time the alleged acts took place and therefore he could not have acted under the color of law.

But the deprivation of individual's rights arise not only when a person acts under the color of law, but also when he acts under "custom" and "usage" within any state of the union. And those actions of "custom" and "usage" cause a deprivation of rights . . . guaranteed by the Constitution and laws of that state or of the United States. Louisiana is clear as to the place of "custom" in La. C.C. art. 3 [of the civil code]. This is discussed more fully in the Webbs' opposition to the motion to dismiss.

-16-

But, 42 U.S.C. § 1983 is clear:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress. Such civil suits [in equity] arise under
> 42 U.S.C. § 1983-1988 and under Louisiana law including but not limited to LSA-
> C.C. 2315, and conduct such as otherwise prohibited by Louisiana criminal statutes
> such as LSA-R.S. 14:36 et seq..

Deprivations of individual rights also occur because of such conduct as identified under18
U.S.C.§245(b)(2) Federally Protected Activities, although this code article does not give rise to civil
suits or suits in equity itself.

As in the case of the use of federal DOTD standards in civil injury claims, § 245 does identify
standards below which such conduct may not fall. As well, § 245 is clear in stating that the person
who deprives another of his right does not have to act under the color of law. These are hate crimes.
They protect against any interference with inalienable rights and activities of a person on the basic
of race, color [and other characteristics] where those activities, benefits, privileges or provided by
or guaranteed by a state or federal law.

18 U.S.C. §245 (b)(2)(B) - Hate Crimes

(b) Whoever, whether or not acting under color of law, by force or threat of force willfully

injures, <u>intimidates</u> or <u>interferes with</u>, or attempts to injure, <u>intimidate or interfere with</u>—

(2) any person because of <u>his race, color,</u> religion or national origin and because he is or has

been—

(B)  participating  in  or  enjoying  any  <u>benefit,</u>  <u>service,</u>  <u>privilege,</u>  program,  facility  or

<u>activity</u> <u>provided or administered</u> by <u>any State</u> or <u>subdivision thereof</u>; while these

federal code articles do not give rise to a cause of action themselves, they identify

criminal acts and violations of individual rights which do give rise under 42 U.S.C. § 1983

and under Louisiana State Law including but not only La. R.S. 2315, et seq..

Actions such as Morella's attacks on the Webbs fall within the conduct identified and

prohibited by the Hate Crimes acts. These acts identify the conduct which can be examined and

considered in civil and equity actions under federal and state law. The Hate Crime Act does not give

rise to the civil actions itself, as has been acknowledged from the outset.

**Louisiana Law Claims**. All persons including the Webbs are guaranteed certain inalienable

rights under the United States Constitution and the1974 Louisiana Constitution, under Louisiana's

Constitution particularly at Art. 1 § 3 (right to individual dignity), § 5 (right to privacy), § 20 (right

to human treatment), and § 22 (access to courts); and under the laws of the State of Louisiana,

including but not limited to LSA-R.S. 14:40, *et seq*. (intimidating by officers),  LSA-C.C. art. 2315

(liability for acts causing damages), (abuse of process and negligent misinformation) *See*: *State v.*

*Tate* 171 So. 108, *Monell v. New York City Dept of Social Services,* 436 U.S. 658*, City of Canton*

*v. Harris,* 489 U.S. 387*, McMillian v. Monroe County,* 520 U.S. 781*, Bryan County Comm'r v.*

*Brown,* 520 U.S. 397*, and Burge v. St Tammany* 187 F 3d. 452, C.A. 5 (La.)1999, *Holly Ray Burns*

*v. Orleans*, No. 05-30837, U.S. Fifth Circuit Court of Appeals (14 January 2008). Those rights were

violated by Morella in his attack on the Webbs. Morella's conduct is actionable under federal and Louisiana law, as examined in the Webb's opposition to Morella's motion to dismiss.

## V.       Morella Obligated to Admit The Truth of Facts And The Conclusions

The Rule suggests that "denials of factual contentions involve somewhat different considerations". Often, of course, a denial is premised upon the existence of evidence contradicting the alleged fact. At other times a denial is permissible because, after an appropriate investigation, a party has no information concerning the matter or, indeed, has a reasonable basis for doubting the credibility of the only evidence relevant to the matter.

But the Committee in the Notes is unequivocal: "A party should not deny an allegation it knows to be true; but it is not required, simply because it lacks contradictory evidence, to admit an allegation that it believes is not true".

Rule 11 at (b)(3) and (b)(4) equalizes the burden of the rule upon plaintiffs and defendants, who under Rule 8(b) are in effect allowed to deny allegations by stating that from their initial investigation they lack sufficient information to form a belief as to the truth of the allegation. The Committee has held that "If, after further investigation or discovery, a denial is no longer warranted, the defendant should not continue to insist on that denial".

## VI.      Such Conduct Proves One Unfit To Uphold the Constitution and Laws

Attorneys licensed to practice by the Louisiana Supreme Court are sworn to uphold the Constitution and laws of the United States and those of the states. They are charged with ensuring that fairness and justice is made available to every citizen. Morella's actions are contrary to his obligations as an attorney and a judge.

The Louisiana Supreme Court in *In re: Judge Timothy Ellender*[5] reiterated the principles required of those who serve in the justice system and are licensed to be officers of the courts: "Our judicial system stands as the hallmark of a system created to ensure that <u>fairness</u> and <u>justice</u> is dispensed to every citizen, <u>without fear of bias</u> or <u>prejudice</u>."

"Justice Francois-Xavier Martin, a great Chief Justice of Louisiana, quoted by Justice Poche in *State ex rel. Attorney General v. Lazarus*, 39 La. Ann. 142, 1 So.361, 376 (1887), eloquently stated, "All those who minister in the temple of justice from the highest to the lowest, should be above reproach and suspicion. None should serve at its altar whose conduct is at variance with his obligations." It is widely understood that judges symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system."

"As a public official, a judge's behavior both on and off the bench must comply with the highest of standards delineated in the Canons."

Canon 1, entitled "A Judge Shall Uphold the Integrity and Independence of the Judiciary," provides: An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.

Canon 2(A), entitled "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities," provides: A judge should respect and comply with the law and should act <u>at all times</u> in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

In his dissent, Justice Victory cited: *In re Lowery*, 999 S.W.2d 639, 661 (Review Tribunal, Appointed by the Texas Supreme Court Feb. 13, 1998) involved several incidents of misconduct on

---

[5] *Ibid.*

the part of a Dallas County judge. In a particular incident, the offender identified himself as a judge and sought unmerited parking privileges, but the African-American parking attendant refused to accommodate the judge. The judge then referred to the parking lot attendant as "n****r" and/or "blackmotherf***er." In assessing the judge's conduct, the Court noted that the verbal abuse and racial slurs were "<u>serious misconduct</u>" but "standing alone might justify a reprimand or censure." [Emphasis mine]. In this case, Judge Morella's similar racist misconduct does not stand alone. These threats and assaults on the Webbs increase the significance of his offenses.

## VII. Informal Service Not Valid In the United States Fifth Circuit

Informal Service Not Valid In the United States Fifth Circuit for Rule 11 motions. While Morella informally sent a copy of his motion to counsel prior to filing it was the Court, informal service is not valid in the Fifth Circuit. Formal service is mandatory. Informal notice is insufficient to comply with the text and the letter of Rule 11.

The United States Fifth Circuit holds that "compliance with the service requirement is a mandatory prerequisite to an award of sanctions under Rule 11". *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.1995); *see also Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir.2000) (affirming denial of sanctions because (1) the defendant failed <u>to serve</u> a copy of the motion on the respondents twenty-one days prior to filing with the court, and (2) the defendant did not file motion until after the trial had concluded).

"[S]uch service [is required] to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention."[*Elliott*, 64 F.3d at 216].

The Fifth Circuit has followed the lead of other Circuits in considering the sufficiency of informal notice, as all of the other circuits have addressed the issue in the context of Rule 11 and

determined that it is insufficient to comply with the text and spirit of the Rule.

In *Roth v. Green*, the Tenth Circuit held that warning letters sent to the respondent in advance of filing were insufficient to comply with the service requirement. [466 F.3d 1179, 1192-93 (10th Cir.2006)]. After analyzing the language of Rule 11 and the Advisory Committee Notes, the court concluded that "warning letters, such as those sent by defendants to [counsel], are supplemental to, and cannot be deemed an adequate substitute for, the service of the motion itself." Id. at 1192. The court went on to state the following.

"The reason for requiring a copy of the motion itself, rather than simply a warning letter, to be served on the allegedly offending party is clear.   The safe harbor provisions were intended to "protect  litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effects, formalize procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourage the withdrawal of papers that violate the rule without involving the district court."   Thus, "a failure to comply with them [should] result in the rejection of the motion for sanctions."

The Fourth, Eighth, and Ninth Circuits have all taken a similar approach to interpreting the service requirement of Rule 11.  *Brickwood Contractors Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir.2004) ("It is clear from the language of the rule that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions."); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir.2001) ("[T]he fact that the plaintiffs had advance warning that Rainbow objected to their conspiracy allegation did not cure Rainbow's failure to comply with the strict procedural

requirement of Rule 11(c)(1)(A).");*see also Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir.2003) (denying Rule 11 sanctions because the defendant sent informal letters to the plaintiff instead of a copy of the motion for sanctions)

The Fifth Circuit also rejects the argument that informal service is sufficient to satisfy the service requirement. It has continually held that strict compliance with Rule 11 is mandatory. *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir.1995); *In re Pratt*, No. 06-10468 (5th Cir. Sept. 13, 2007) (unpublished) (affirming the district court's denial of sanctions when movant failed to serve respondent with a copy of the motion prior to filing it with the court); *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir.2000) (affirming denial of sanctions because (1) the defendant failed to serve a copy of the motion on the respondents twenty-one days prior to filing with the court, and (2) the defendant did not file motion until after the trial had concluded).

The Fifth Circuit has repeatedly stated in regard to the Rule 11 requirements: "We may not disregard the plain language of the statute and our prior precedent without evidence of congressional intent to allow "substantial compliance" through informal service.

## VIII.   Conclusion - Morella's Rule 11 Motion for Sanctions Should Be Denied

The Webbs' complaint and most significant cause of action arises from Morella's racist attacks upon them particularly in light of the fact that he is a town court judge, a licensed attorney and therefore an officer of the courts obligated to impartially uphold the constitution and laws of Louisiana and the United States. Morella's violation of the Webbs most basic constitutional rights erodes the public confidence in the integrity and impartiality of the Louisiana judiciary.

Defendant Morella ignores and denies the facts evidencing his attacks on Pastor and Mrs.

-23-

Webb which they set forth in their federal complaint and their sworn affidavits. Morella simply says that he never made such remarks to the Webbs nor did he ever lose his temper and threaten Mrs. and Mr. Webb.

The Webbs and counsel have provided  "The certification that there is "evidentiary support" for their allegations.

The Webbs have verified the facts in their original complaint by sworn affidavit attached to the complaint. Their affidavit and testimony is "evidentiary support" of each of the allegations. Their own testimony is contrary to that of Morella and his legal assistant and therefore establishes the genuine issues of material facts that are in dispute. Neither this motion nor Morella's motion to dismiss is a trial on the merits. Although both motions are about Morella's conduct and whether that conduct gives rise to causes of action under either state or federal law. It does, under both. And Morella's conduct also erodes the public confidence in the integrity of the judiciary itself.

Under Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. The service of a cross motion under Rule 11 is not necessary since the court may award to the person who prevails on a motion under Rule 11--whether the movant or the target of the motion--reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.

The Court should deny Morella's  Motion. The Webbs should be awarded expenses and fees for having to defend.

Respectfully submitted,                          Certificate of Service

/s/ Martin E. Regan, Jr.                         /s/ Daniel G. Abel
/s/ Glen A. Woods                                I filed this pleading
/s/ Daniel G. Abel                               electronically on 13
Martin E. Regan, Jr.                             January 2011 and thereby
Glen A. Woods                                    served all counsel.
Martin E. Regan, Jr. & Associates
2125 St. Charles Avenue
New Orleans, LA 70130
Telephone: 504.522.7260
Facsimile: 504.522.7507
E-mail: mregan@reganlaw.com

and

DANIEL G. ABEL
2421 Clearview Parkway
Legal Department / Suite 106
Metairie, LA 70001
Telephone:504.208.9610
Facsimile:888.577.8815
danielpatrickegan@gmail.com